No. 2130.

Second Circuit Appeal

MISS ADELAIDE KELLER v. JOS. REID GAS ENGINE COMPANY. APPELLANT.

(October 31, 1924, Opinion and Decree)

(Syllabus by the Editor.)

1. Louisiana Digest—Automobiles—Par. 4, 4 (a), 4 (d), 6 (a).

Where an auto on a public road exceeding the speed limit swerves to the left and collides with another automobile being driven carefully on right side, the auto driver of the car being driven fast and on the left side is negligent and he and his employer are liable for the resultant damage.

2. Louisiana Digest — Automobiles — Par. 6 (a).

The employer is liable for the negligent act of his employee while driving an automobile in the course of his employment.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the First District Court, Parish of Caddo, Hon. E. P. Mills, Judge.

This is a damage suit for personal injuries.

Judgment for the plaintiff and defendant appealed.

Judgment affirmed.

Miss Carrie Keller and Wallace, Lyons & Peters, all of Shreveport, attorneys for plaintiff and appellee.

Bullock & Warren of Shreveport, attorneys for defendant and appellant.

PORTER, J. This is one of a series of three suits which grew out of a collision

between a Franklin Touring Car and a Dodge Roadster, on the Shreveport-Mooringsport road, on the 22nd day of June, 1923.

The Dodge car was owned by the defendant Company, and was being driven at the time by one of its employees. The Franklin car was owned by Miss Carrie Keller, and was being driven by the plaintiff, a sister of the said Miss Carrie Keller, and in it were the plaintiff's said sister, her mother, Mrs. E. H. Keller, and a young lady guest, Miss Bernice Carnathan. All of the occupants of the Franklin car suffered more or less physical injuries, while the two persons in the Dodge car escaped injury.

The defendant Company is a foreign corporation engaged in manufacturing and selling gas engines and their accessories. It conducts a branch business in Shreveport, with a general manager in charge of the territory of Louisiana and Arkansas. The three persons who were in the Franklin car have each instituted suit for damages, and these suits were consolidated for the purpose of taking testimony alone, but all of them were submitted on one argument.

The petitions in all of the cases are quite lengthy, and we do not deem it necessary to even summarize the allegations of them. It is sufficient to say that they all set forth a cause of action. We shall, in the course of this opinion, refer to the essential facts set out, both in the petitions and in the answers in the three suits.

The trial in the District Court resulted in a judgment for the plaintiff in this case. (No. 2130) for $500.00, and legal interest, and the defendant has appealed. The plaintiff has answered the appeal, and prayed that the amount awarded be increased to the sum claimed by her—$750.00.

The accident occurred at a point on the highway leading from Shreveport to Mooringsport, and about ten miles from Shreveport. The surface of this road is asphalt, and it is eighteen feet wide, with a margin of perhaps two feet on each side of sand and gravel. There is a wide ditch on the right hand side of the road, (going from Shreveport) which is nearly three feet deep. The general direction of the road is from the east to the west, and at the point of the accident, it was straight for a long distance both ways.

The contention of the plaintiff is that she was driving the Franklin car west at a moderate speed—about fifteen miles an hour—that she was driving on the right hand side of the road as near to the ditch as it was safe to drive; that she saw the Dodge car a considerable distance before they met; that it was running in or about the center of the road at a speed of what she judged to be thirty miles an hour; (the ordinance of the Police Jury limits the speed to 25 miles) that just as the two cars got nearly opposite to each other, the Dodge car swerved suddenly into the car she was driving, striking it near the middle, throwing it into the air, and turning it over on its side near the edge of the ditch. The contentions of the occupants of the Dodge car, who were Mr. Slonaker, the defendant's general manager, and Miss McDuffie, an employee in the office, are, on the other hand, that Miss McDuffie was driving at a reasonable and lawful rate of speed, and on the right hand side of the road, as she should have been, and that when she got opposite the other car, it suddenly swerved to the left, and struck the car she was driving.

In short, the statements of the plaintiff's witnesses make out a case of negligence against the driver of the defendant's car, while defendant's witnesses as to the ac-

cident, make out a case of negligence by the driver of plaintiff's car.

We do not think there is any basis for the charge of contributory negligence on the part of the plaintiff, which is contained in defendant's answer. The case is one of simple negligence, which was the proximate and sole cause of the accident, by one or the other of the two drivers of the cars, and the case must be determined in favor of the side upon which the evidence preponderates.

At this point, it is proper to consider a question of law raised in defendant's answer, which is to the effect that when the accident occurred, its employees, Slonaker and Miss McDuffie, were not acting for it, were performing no duty connected with their employment, and were, in fact, acting beyond and outside of the scope of their employment. The facts in reference to this defense, are as follows:

It appears that the defendant Company had not very long prior to the accident sold to the Gulf Refining Company a steel foundating for one of its gas engines, which had been shipped and delivered to the purchaser at Smackover, and subsequently sent by the purchaser to Mooringsport to be used as a foundation for one of its engines at that place. Mr. Slonaker had heard that the foundation had been installed at Mooringsport, and he desired to see it with the engine upon it. It further appears that this steel foundation was the first one that had been sold in this territory, and was, in a sense, an experiment.

On the day of the accident, Mr. Slonaker, early in the afternoon, left the office in Company with Miss McDuffie, in a Dodge car belonging to the Company and used by him habitually in the Company's business, for Mooringsport for the purpose above stated. When they got to Mooringsport they found that the steel foundation had not been installed, but was in the warehouse of the Gulf Refining Company. They then went for a ride on the lake, at the invitation of some official of the Refining Company, after which they started on their return home. It is a fact that the steel foundation had been fully paid for by its purchaser, and that as between its purchaser and the seller, the matter was a complete one. It is therefore contended by the defendant's counsel that, so far as the defendant was concerned, it had no further interest in or connection with the transaction, and that the visit of Mr. Slonaker and Miss McDuffie to Mooringsport for the purpose of seeing the appliance was prompted by mere curiosity on their part, or at least, by some motive which had nothing to do with defendant's business.

According to this restricted view of the facts, the defense is, at least, a plausible one, but this is not a full statement of the facts.

Miss McDuffie had been in the employ of the defendant for seven years. She was not a mere stenographer in the office, but her duties were much broader. In defendant's answer, she is referred to as the assistant to Mr. Slonaker.

Mr. W. L. Dickinson had been for six years the predecessor of Mr. Slonaker, and had secured the order from the Gulf Refining Company for the steel foundation in question, which had been delivered, however, after he severed his connection with defendant, and was succeeded by Mr. Slonaker. Speaking of his duties as general manager, he said it was to his interest, as well as the interest of the Company, to know that the machinery (sold by the Company) was properly installed, "and I always was interested as a satisfied customer is the best thing in the world and

we took a great interest when we sold a man an engine to know that it was installed properly, and started going right."

In reference to Miss McDuffie's duties, he was asked if she was a salesman, and replied: "She is a pretty good one, better than I was. She helped me lots." He said further that while she did not go out on the road, she helped him a great deal; that he thought that customers were more pleased to see her come around than they were to see him; that she was very familiar with the business, and very valuable to the Company.

He testifies that the day after the accident, he met Mr. Slonaker, and asked him about it, and that in discussing the matter, Mr. Slonaker told him: "that they had gone to Mooringsport just as stated before to show Miss McDuffie this steel foundation. He was asked: Q. "You understood from Mr. Slonaker that he had taken her up to Mooringsport or near Mooringsport in order that she might see this foundation?"   A. "Yes, sir, so that she would be familiar with what she was talking about when customers showed up and were asking questions. Something that I always tried to do, and she was very well equipped and would get this information."

In addition to this, it is shown that Mr. Slonaker visited the Sanitarium shortly after the injured persons had been carried there and that in a conversation with Dr. Abramson and Miss Carrie Keller, he made the following statement, as testified to by Dr. Abramson and Miss Keller:

"A.   Mr. Slonaker said that he was sorry that the accident occurred, and said to me he thought if Miss Keller's car was running faster, maybe it would have not occurred, and said that he had gone to Mooringsport with a young lady that worked here (Shreveport) in the office, and wanted to show her some work that was being done up there (Mooringsport) by his company, and he went up there    (Mooringsport) and showed it to her, in order that she might know better what she was talking about when she was talking to customers about it, and coming on back for experience, she was driving the car."

Mr. Slonaker, presumably, heard the above statements. It is certain that defendant's counsel heard them, and they must have realized how inportant they were, and yet, Mr. Slonaker, who testified at length, did not deny them or even refer to them, and hence, they must be accepted as showing his purpose in taking miss McDuffie to Mooringsport.

The many authorities from text writers and Courts referred to by the able counsel for the defendant state the law on the point involved correctly, but they are not applicable.

It must be remembered that Mr. Slonaker was the general manager of the defendant in this territory, and as such, he was vested with a very wide discretion as to the scope of his duties. And if the trip to Mooringsport was for the purpose of enabling him and Miss McDuffie, or either of them, to become more familiar with the steel foundation so that they could the more intelligently discuss its merits with prospective purchasers, it is clear, we think, that it bore a direct relation to the duties of the manager, and was calculated to further the interests of the employer.

As to the question of who was to blame for the collision, we shall not attempt to discuss in detail the voluminous and conflicting testimony of the several witnesses. It is enough to say that the District Judge, who heard the witnesses, decided the questions of fact in favor of the contentions of the plaintiff. But we shall go further and.

say that after a most careful study of the testimony, we are of the opinion that a clear preponderance of it supports the conclusion reached by the learned trial Judge.

The witnesses who described the accident were: Miss Carrie Keller, owner of the Franklin car, Miss Adelaide Keller, who was driving it, and Miss Addington, all for the plaintiff, and Mr. Slonaker and Miss McDuffie, who occupied the Dodge car, for the defendant.

The three first named witnesses fully support the contention that the Dodge car, as it met the Franklin, swerved suddenly to the left and struck the Franklin. Miss Addington was not related to, and had no connection with, any of the parties to the suit. She and her mother had been following the Dodge car for a mile or more, and was, say 150 yards behind it, when it struck the Franklin.

But more than this, the physical facts with reference to the condition of the two cars after the accident, show that the left front wheel of the Dodge car struck the Franklin a little in front of the middle, and practically wrecked the rear end, or, at least, the right side of the rear end of it.

The testimony of Hillier, foreman of the garage which repaired the Dodge car, states that the left front wheel was crushed— "completely gone, the rim was twisted and the spokes were knocked out."

If it were necessary for us to say, from the testimony, just why the accident occurred, we should say that Miss McDuffie was driving in or near the center of the road at a pretty rapid speed; that for some unexplained reason, she did not see the Franklin car until just an instant before the collision, and that when she did see it she was startled, lost her nerve, and,

intending to turn to the right, turned to the left instead, and struck the other car. We get this impression largely from Miss McDuffie's account of the collision.

She was asked: "What caused the collision?" Ans. "I was hit." Q. "What first apprised you that there would be a collision?" Ans. "It was when the car hit." Q. "What did the other car do?" Ans. "I don't know." Q. "Was it coming straight to you, or in what direction?" Ans. "I was on the right side of the road, the other car was coming straight forward." Q. "When it struck you, why did it strike you?" Ans. "Well, now, I was not watching the other car (as) much as I was watching my own car."

We do not wish to be understood, in anything we have said in regard to this young lady's testimony, as intimating that she purposely misstated any fact. She doubtless related the incidents according to her recollection, which as to the matters immediately preceding the accident, does not appear to be very clear, influenced, unconsciously, by her connection with the defendant Company.

The question which has given us more concern than any other— and this applies to all of the suits by the parties who were injured—is the question of the amount awarded. The counsel for defendant urge with much earnestness, that the amount is excessive. The physical injuries inflicted on plaintiff were very slight. Her arm, she says, was wrenched, and she was bruised on other portions of the body. She was asked: "Did you suffer any pain?" Ans. "Some when I would move it especially." (Referring, we presume, to her arm.) Q. "It did not require medical treatment, did it?" Ans. "I stated it was not much; it hurt, and in lifting my mother, it hurt me a good deal, in fact, I could hardly lift her. It hurt about the body and here" (witness

indicating with hand). The plaintiff did not go to bed, and we infer that the pain she speaks of was not severe nor long continued. Certainly, she is not entitled to anything like $500.00 on the score of physical injury or pain. The District Judge did not hand down any written opinion and we have no means of knowing the basis of the award, but we infer that it was principally for mental anguish.

The allegations of her petition on this point and they are supported by the testimony—are, substantially, as follows:

That her mother was thrown out of the car to the ground, falling partly on the pavement and partly on the dirt part of the road; that the full extent of the injuries to her mother was not and could not be determined at that time; that Miss Carnathan, plaintiff's guest, was thrown through the windshield on to the road; that her throat and face were badly lacerated, causing her to bleed profusely. That all of the occupants were and are now extremely nervous as a result of the accident. That her mother and Miss Carnathan were picked up from the road and placed in a car with plaintiff's sister, (Miss Carrie Keller), that was coming to Shreveport, to be taken to a sanitarium. That there was no room in said car for plaintiff, and she was forced to remain, wet with blood of Miss Carnathan, until another car could pick her up and bring her to Shreveport; that it was more than two hours before she could reach the Sanitarium and learn the extent of her mother's injuries, and whether or not Miss Carnathan had bled to death before reaching the Sanitarium, and that for the pain and mental anguish suffered by plaintiff, for these reasons, she is entitled to recover $750.00.

That mental anguish is a proper element of damages cannot be questioned. In a case recently decided by the Supreme Court,

(Brooks vs. Interurban Motor Transportation Co., Current Southern Reporter of July 12th, 1924) the court, in speaking of awards for damages in this class of cases, said:

"That question always involves more or less embarrassment, as its solution rests in the sound discussion of the Judges and juries. The only safe rule is to abide as much as possible by precedents."

And it cites a number of cases for the purpose of establishing as far as possible, some kind of basis for such awards. In the case quoted from, it reduced a judgment for personal injuries from $1500.00 to $500.00, but allowed an item of $500.00 for pain and suffering to stand.

The fact which differentiates that case from this is that in the former case, the physical pain suffered was much greater than that endured by the plaintiff here, while the plaintiff here suffered much more intense mental pain or anguish because of the fright over the condition of her mother and her young lady friend and guest, and the fear that the latter would bleed to death from the wound in her neck.

While we are inclined to think that $500.00 is rather more than is authorized by the general trend of cases of this character, particularly in view of the absence of evidence as to the character and extent of the wound on the throat of the young lady, (neither she nor the physician who treated her testified) and hence our inability to determine whether the chance of her death before assistance could be secured was reasonably apparent, we are not able to say that it is clearly excessive. Under such circumstances, it is, we think, the safer rule to defer to the judgment of the trial court.

The judgment is therefore affirmed.